May it please the Court, Attorney Murray Hiltz v. Baharta Sotelo, basically the issue at hand, the sole issue is whether the petitioners have met the first prong of seven years physical presence for suspension and deportation. We believe the petitioners have met that through two routes, through the Burma-Hona fast action and case law Guadalupe Cruz. By the planning of the Guadalupe Cruz, they met the burden. In the second, there's numerous groups, but number two is the group that we're only worried about in this case. The first situation is whether the cases were pending at the BIA from February 13, 1997 to April 1, 1997. This decision, the immigration judge's decision was in 95, and the BIA dismissed the case in 98. So during that whole time, this was pending before the Court. Counsel, are you even a member of the class here? What year did your client apply for suspension of deportation? I think in motion to reopen was March of 98. But that doesn't put you during that time period in 1997. It seems to be covered by the class action. Well, if you look at the plain meaning of the statute, all it does is bring up it had to be pending. It did not say it had to be pending. Well, yeah, but what was pending in 1997 was your asylum claim, not your suspension of deportation claim. That is true. But at that pending time, they were actually eligible. They hadn't approved the seven years at that point. What they did was what would be normal situation. They waited until the decision was made by the BIA. But the question is, what's covered by the class action? I would think anybody that the plain meaning of group number two. Well, group number two is who is eligible that's within the class action. I'm asking you whether you're even covered by the class. They were given a class action, a notification. I mean, I think. Well, notification doesn't mean that you're a member of the class. That's oftentimes a notification that you may be a member of the class. I would suggest that in light of the fact that this was a stipulation by the government, they agreed to the wording of group two. And the group two basically says all it says is what's the case pending in that time period. And their case is pending in that time period. In questions where there's ambiguity, where it just says pending at this point, it doesn't say pending for suspension of deportation. In St. Cyr and Fonseca, it says lingering ambiguities go to the favor of the alien. And for that reason, all we're looking at is the plain meaning of section two. And all it says is whether it was pending. And that's all. There's nothing more to the situation. All the prongs are met. The other prong is whether they filed a notice of appeal. The reason I ask, counsel, is that as I look at this, as I look at the class action settlement, your construction that as long as you were in the system in 1997 had some kind of an appeal, even if it's not an appeal for suspension of deportation, would seem to undermine the rest of the agreement. It doesn't undermine the category. It basically, they wrote in the category. They had, it was a negotiated. Well, but your interpretation of Category 2 seems to make mincemeat of Category 1. Well, I'm not, it's just, all you have to meet is one category. You don't have to meet all the categories and then meet Category 2. Well, yes, but shouldn't we try to construe this agreement in a way that makes, tries to make sense of all the provisions or just Category 2 provisions? It's so conflicting, I don't think you can do that. I think that's. Okay. So your position is that the document is self-contradictory and therefore we should just construe it against the government. Yes. I mean, that's one way to look at it. But I don't think we need to be that broad. I think if you look at Number 2, it basically states pending. Right. Whose cases. But in light of Number 1, we might reasonably construe the word cases to mean those who have cases dealing with suspension of deportation, not anybody who's got an asylum claim, since this only deals with suspension of deportation claims. And it gives you very, very specific dates. If you've got a case pending before the BIA on appeal. Well, my contention is this. I think it becomes kind of arbitrary at that point. I'm 97. If they would have done a motion to remand during that time period, they would have been eligible for that. But they didn't. But I think that makes it, I think that makes the language of the agreement very narrow. I don't think it needs to be that way. There is case law that suggests anything that is ambiguous, and clearly this is ambiguous, goes to the favor of the immigrant. Counsel, there is also an and in paragraph 2. You not only have to have an appeal pending on that date, but on that date your claim must have been denied on the basis of Section 309, which yours was not. Or whether or not the decision of the BIA denying the suspension solely on the basis of 309 has already been issued or not. Okay. Your claim was not denied on the basis of 309. It wasn't in any danger of being denied on the basis of 309, was it? It was denied on the basis of the fact that your clients didn't qualify for asylum. It's original. Yes. But I want you to look at that carefully. It says your case has to be pending between, your appeal has to be pending between February 13th and April 1st, 1997, which your case was. But it didn't have anything to do with the second clause there, which is 309. Well, there was a decision on 309 when we did the motion to reopen. Years later. Well, I would say it was still in the same relative context. They did it within the 90 days, which is all they have to do by statute. They did the motion to reopen within 90 days after decision. It seems rather narrow to, if you construe it narrowly, they had to do, they could have basically done a motion to remand within that time frame and have been eligible. It's hard to read a provision that says your case has to be pending between February 13th, 1997 and April 1st, 1997. Anything but narrow, doesn't it, counsel? It just says pending. It does not say for what. And in that context and in that time, this is what happened. I'll tell you exactly what happened in this case. Notorious came down. They basically did asylums. These people had a problem, but it was, they're from Mexico, it was a very bad asylum. Only reason we took this case was because we knew at the time when we did the individual hearing, that they were very close to getting seven years. And that's why we took it, because they had a good chance of getting a motion to reopen based upon seven years. It was contemplated. I think that's more in the line of what the actual law was. So I don't think, in looking at the government stipulates to this agreement, and it says pending, and it says it was denied for motion to reopen, and that motion to reopen was based in a timely fashion. And then whether or not the decision of the BIA denying the basis has already been issued. That is not, I don't, that's very, for one thing, it's very vague, and two, I don't think it's a narrowing provision at all. Also, and they have a footnote, it seems to be leading to something about repavering. It doesn't have really much to do with Section 2. Also, it says either direct appeal from the immigration judge or motion to reopen. So I think they're trying to make it as broad as possible. And I think the biggest contention in this case is plain mean news there. The government was represented. They didn't object to the stipulation. And for that reason, they should be in the jury. Thank you. Thank you. May it please the Court? My name is Nicole Nardone. I'm the attorney for the Respondent of the United States. Excuse me. The Court should find that the Board properly denied the Petitioner's motion for reconsideration because they were ineligible to apply for renewed suspension of removal under the Barahona-Gomez class action. Barahona-Gomez, just as a matter of background, was a class action lawsuit challenging directives issued by the Executive Office for Immigration Review before the implementation of a rare stop time provision that prohibited immigration judges and the Board from granting suspension of deportation during a very small time period, approximately three months, between February 13, 1997 and April 1, 1997. The purpose of this class action is stated in the Barahona settlement. Specifically, it's stated in the notifications to class members. And those notifications really essentially are trying to boil down into the simplest language for the class members what the purpose of the settlement was. And one of the things that it states is that this class action covers persons who could have been granted suspension between the time period of February 13, 1997 and April 1, 1997 when EOR's prohibition was in place. Ms. Nardone, you may want to just rebut his argument. I think he didn't concede, but I think he recognizes that there were specific requirements for members of the class. And his client didn't meet those specific requirements. He says, but, and then you should tell us why his but is either accurate or not, if you want to. Sure, I would like to. The petitioner is arguing that he meets provision two of the class. And we dispute that argument for a very basic reason, which is that he simply doesn't meet the plain language of the requirement. Provision two requires three things. It requires that the petitioner have a case pending at the Board during the relevant time period, for which, number two, for which a notice of appeal or reopen was filed on or before October 1, 1996, and third, which was denied on the basis of the stop time provision. The petitioner doesn't meet all three of these factors. Although he filed a petition for appeal with the Board, which was filed prior to the effective time period and was pending during the proper time period, this was not denied on the basis of the stop time provision. Rather, that appeal, as the justices pointed out, was denied based on him not being eligible for asylum. And secondly, likewise, although he did apply for suspension of removal, he didn't do so until 1998, long after IREER's stop time provision was implemented. And this is the case. Are you saying that the stop time provision is a requirement of section two of the stipulation or the agreement or whatever it is, the settlement agreement? The settlement agreement does provide that the ‑‑ it requires three factors, the third of which being that the ‑‑ that it was denied on the basis of the stop time provision. That the initial ‑‑ And he does not qualify for that? He does not, because his ‑‑ Because it was denied. The claim that he had on file at the time was simply denied. He didn't show asylum. It was denied for another reason. It was denied for asylum. It was not denied for asylum. And you say that is a requirement of subsection two or section two. That's correct. And therefore, even if section two eligible class members included anyone who might fit within that section, even though they might not fit within the definition in Roman numeral one, even if all we look to is two, he still doesn't qualify. Is that what you're saying? I'm saying yes, that's right. Because he did have all three of those factors and he didn't for this particular appeal. And, I mean, significantly, I think we need to look at the big picture here. If we're taking a look at what the intent of this settlement was, it was to provide remedy to those persons who had been essentially their applications for suspension. Although they got their applications in for suspension before ARERA started, before the stop time provision was implemented, they submitted their application for suspension. But there was this directive by EOIR that said we're not going to process these for three months. And the class action settlement was intended to remedy that problem. And clearly the petitioner here does not fit into that three-month category because he didn't apply for suspension until 1998, which is long after ARERA had been implemented. And clearly it would defeat the purpose of ARERA if we were to allow the petitioner to slide in long after Congress had spoke on this issue and said, you know, we're no longer going to allow people to accrue time for purposes of suspension, of deportation, up until the date that they apply. At this point, the Congress had already spoken on this issue. It already said stop time applies. So it simply wouldn't make sense to allow, to interpret provision two as applying to Mr. Sotelo's application for asylum, which had been long before ARERA. Based on the foregoing, the Court should find that the Board properly denied Mr. Sotelo's motion for reconsideration. Do you have any further questions? Counsel, I know that you've argued that he doesn't qualify under paragraph two. I guess the initial question, I want to follow up on Judge Thompson's question, is, is he even a member of the class in the first place? Well, I argue that he's not, no. He's not a member of the class. So we don't even have to get to paragraph two. Well, he is applying under paragraph two, which is why I'm addressing that issue. And I think the reason he's applying is because it can be, you can look at this language, if you look at it and not look at it in the context, in the broader context of the settlement, and perhaps you can see that he at least argues that he fits into that provision. However, if you look at all of the other provisions for eligible class members, it makes very clear, for example, if you look, in number, it's a page in the Barahona case. It's at page 1031, Roman numeral two. They set forth the eligible class members. And the title itself says, New Consideration of Applications for Suspension of Deportation. Now, again, Mr. Sotelo had not actually applied for suspension of deportation until after 1998, until after the ARERA was implemented. And if you look at each of the class members, the eligible class members, provision one refers specifically to individuals for whom the immigration judge reserved a decision or scheduled a merits hearing on a suspension application. So the other provisions make more explicitly clear, I think, that the eligible class members include persons who had applied for suspension during that time period. Whereas, for some reason, provision two doesn't specifically say you had to have applied for suspension, although I think it's very clear from the purpose of this. I'm looking at the definition of the class, which is in Roman one of the Barahona decisions you referred to. And that says all persons who have had or would have had suspension of deportation hearings conducted before April 1, 1997. That's the definition of the class. Mr. Ricardo doesn't even seem to be within that definition of the class. No, he's not, because he never applied for it. It obviously never really occurred to him. Not before April 1, 1997, anyway. Right, not until 1998. Okay. If there's no further questions. Thank you, counsel.
judges: Thompson, Tashima, Bybee